## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL LOVE,<br><br>      Plaintiff,<br><br>      v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 13-cv-1303 (TSC)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Abdul Love, proceeding *pro se*, is an Illinois state prisoner serving a 15-year prison term imposed in 2009 for possession of a controlled substance with intent to deliver.[1]  (Compl. ¶ 15, ECF No. 1.)  He surmises that he was "set up by an individual named Silas Peppel, whom [plaintiff] believed had been implicated in a scheme to counterfeit U.S. currency in Carbondale, Illinois."  (*Id.* ¶ 6.)  In May 2012, plaintiff submitted a Freedom of Information Act (FOIA) request to the Drug Enforcement Administration (DEA), a component of the Department of Justice (DOJ), seeking investigative records pertaining to the counterfeit scheme and Peppels.  In

---

[1]  In addition, plaintiff was sentenced to a prison term of 40 years for murder for hire. *See People v. Love*, Nos. 2-09-1274, 2-09-1294, 2011 WL 10102469, at *1 (Ill. App. Aug. 31, 2011) ("In two separate bench trials, defendant, Abdul M. Love, was convicted of two counts of solicitation of murder for hire (No. 06–CF–160) and of unlawful possession of a controlled substance with intent to deliver (No. 05–CF–3811).").

1

October 2012, DEA released some records and withheld others.  Dissatisfied with

DEA's response, plaintiff filed this action in August 2013.

Pending is DOJ's motion for summary judgment (ECF No. 29).  Plaintiff has

opposed the motion (ECF No. 32) and defendant has replied (ECF No. 34).  Upon

consideration of the entire record, and for the reasons explained below, the Court

GRANTS DOJ's motion.

## I.  BACKGROUND

In a prolix FOIA request, plaintiff listed ten categories of records pertaining to

"case # 20050424008 originating out of Carbondale, Illinois."  In sum, plaintiff

sought "any and all documents and communications" involving (1) agent Paul Fisher

of the United States Secret Service, (2) Silas Peppel described by plaintiff as an

"informant/ cooperating witness," and (3) various federal, state and local enforcement

entities with regard to plaintiff and "his alleged involvement in counterfeiting U.S.

currency discovered out of independent investigations and/or as a result of [the

foregoing case]."  (Compl. Ex. E (FOIA Request at 3, 5-6)) (page numbers supplied).

In October 2012, DEA released 41 pages, 39 of which contained redacted

material, and withheld 34 pages completely.  Decl. of Katherine L. Myrick ¶¶ 7, 11,

38 ("Myrick Decl.") (ECF No. 29-3).  DEA withheld information under FOIA

exemptions 7(C), 7(D), 7(E), and 7(F).  (*Id*.)  In the release letter, DEA explained that

it could not process plaintiff's request pertaining to "several agencies and their staff

mentioned in [the] request" because such records were unlikely to be maintained by

DEA, which was responsible for processing only those records in its custody and

control.  It invited plaintiff "to contact [those] agencies directly to discuss [that] aspect of [the] request." (Oct. 22, 2012 letter at 1) (ECF No. 29-4).  DEA further informed plaintiff that it could not search by the criminal case number he supplied because "DEA does not index, maintain or retrieve investigative information by reference to criminal case numbers."  (*Id*.)  Finally, DEA informed plaintiff that it could not process information pertaining to third-party "individuals mentioned in [the] request" absent proof of death or an original notarized authorization, and it neither confirmed nor denied "the existence of records relating to . . . Peppel being a confidential source/informant or [having] provided information that assisted this agency in any investigative matter."  (*Id*. at 2.)  Plaintiff appealed the decision to the Office of Information Policy, which affirmed DEA's action by letter dated June 7, 2013.  (Myrick Decl., Ex. F.)

## II.  LEGAL STANDARD

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are

'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id*.

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)).  FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under [one of nine] clearly delineated statutory language." *Id*. (internal quotation marks omitted); *see also* 5 U.S.C. § 552(a), (b).

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions.  5 U.S.C. § 552(a)(4)(B). Thus, the burden is on the agency to show that nondisclosed, requested material falls within a stated exemption. *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)); *Liberty Lobby*, 477 U.S. at 254.  In cases concerning the applicability of exemptions and the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations.  *See, e.g.,*

*ACLU v. U.S. Dep't. of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't. of State*, 257 F.3d 828, 838 (D.C. Cir. 2001).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption," and "is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU*, 628 F.3d at 619.  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (internal quotation marks omitted) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  However, a motion for summary judgment should be granted in favor of the FOIA requester "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption[.]" *Coldiron v. DOJ*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1433).

## III. ANALYSIS

Plaintiff "contends that DEA's search for responsive records was more than adequate . . . so adequate that it uncovered criminal and civil rights violations by the Lake County Illinois States Attorneys Office." (Pl.'s Opp'n at 11-12.)  Hence the Court finds no genuine dispute about the adequacy of the search for records and turns now to the contested withholdings.

1. **DEA's Glomar Response**

Plaintiff argues first that DEA's refusal to either confirm or deny records regarding Peppel was not appropriate.  (*Id*. at 5-7.)  DEA's response is commonly referred to as a Glomar response.  *See Phillippi v. CIA*, 546 F.2d 1009, 1010-11 (D.C. Cir. 1976) (addressing the CIA's refusal to confirm or deny whether it had documents concerning its relationship with the Hughes Glomar Explorer, which was "a large vessel publicly listed as a [privately owned] research ship").  An agency's Glomar response is proper if either confirming or denying the existence of responsive records "would itself 'cause harm cognizable under an FOIA exception.'"  *Am. Civil Liberties Union ("ACLU") v. CIA*., 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)) (other citation omitted).  DEA invoked FOIA exemption 7(D), which exempts from disclosure "records or information compiled for law enforcement purposes . . . to the extent that [disclosure] . . . could reasonably be expected to disclose the identity of a confidential source . . . ."  5 U.S.C. § 552(b)(7)(D).  (*See* Oct. 22, 2012 letter at 2.)

An agency may not rely on a Glomar response if the requester demonstrates that the sought-after records have been officially acknowledged, *see ACLU*, 710 F.3d at 426-27, or are in the public domain, *Marino v. DEA*, 685 F.3d 1076, 1081 (D.C. Cir. 2012).  However, "[i]n the Glomar context," it is not "the contents of a particular record" that is at issue "but rather the existence *vel non* of any records responsive to the FOIA request."  *ACLU*, 710 F.3d at 427 (internal quotation marks omitted).  Therefore, "the public domain exception is triggered when 'the prior disclosure

establishes the existence (or not) of records responsive to the FOIA request,'
regardless whether the contents of the records have been disclosed." *Marino*, 685
F.3d at 1081 (quoting *Wolf v. CIA*, 473 F.3d 370, 379 (D.C. Cir. 2007)).

To defeat summary judgment on the Glomar response, plaintiff must show only
"that the agency has already disclosed the fact of the existence (or nonexistence) of
responsive records, since that is the purported exempt information that a Glomar
response is designed to protect." *ACLU*, 710 F.3d at 427.  If plaintiff succeeds, "the
DEA would be required to confirm that responsive records exist, then either release
them or establish that they are exempt from disclosure." *Marino*, 685 F.3d at 1082.
*See ACLU*, 710 F.3d at 432-34 (remanding case upon "[t]he collapse of the CIA's
Glomar response" to the district court to determine whether the contents of any
responsive documents are exempt from disclosure).

Plaintiff proffers documents from his criminal case in Lake County, Illinois,
(Pl.'s Opp'n Ex. A), none of which is a DEA record or a record of any federal agency.
*Cf. ACLU*, 710 F.3d at 429 n.7 (noting that while a Glomar response may be proper
when the prior disclosure was by "another, unrelated agency," the "rule does not apply
. . . where the disclosures are made by an authorized representative of the agency's
parent."); *Marino*, 685 F.3d at 1082 ("[A] federal prosecutor's decision to release
information at trial is enough to trigger the public domain exception where the FOIA
request is directed to another component *within* the Department of Justice.")
(emphasis in original).  In addition, plaintiff has supplied court documents, including
a ruling by the state criminal court, that belie his public domain theory, since they

establish that a subpoena issued for Peppel was quashed and related evidence was sealed. (Pl.'s Opp'n., Exs. B, C.) *See People v. Love*, 2013 IL App (2d) 120030-U, 2013 WL 5526333, at *3, *as modified on denial of reh'g* (Oct. 3, 2013), *appeal denied*, 3 N.E.3d 799 (Ill. 2014) ("The court reviewed the sealed affidavit, *in camera*, and thereafter granted Peppel's motion to quash"). Consequently, the Court finds that plaintiff has not made the requisite showing of prior disclosure to defeat summary judgment on DEA's Glomar response, which is properly justified as follows:

> DEA refrains from acknowledging [one way or the other] the status of any individual[] that is a source of information. Acknowledging an individual is a source is not required pursuant to FOIA [exemptions 7(D) and 7(F)]. Denying the status of an individual as a confidential source would allow the requester, through the process of elimination, to uncover the identity of any confidential source . . . .

Myrick Decl. ¶ 34.

## 2. DEA's Claimed Exemptions

Plaintiff argues next that DEA improperly withheld information under FOIA exemptions 7(C), 7(D) and 7(E) and the Privacy Act.[2] (Pl.'s Opp'n at 7-11.) Pursuant to DOJ regulations, the filing systems most likely to contain responsive records have been properly exempted from the Privacy Act's access provisions under 5 U.S.C. § 552a(j)(2) and (k)(2). (Myrick Decl. ¶¶ 15, 17) (citing 28 C.F.R. § 16.98, captioned

---

[2] Plaintiff has not challenged, and thus has conceded, DEA's justification for withholding the identities of DEA Special Agents and other third-party individuals under FOIA exemption 7(F). This exemption protects from disclosure law enforcement records that if disclosed "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Since exemption 7(C) suffices as a basis for withholding the same information, the Court will not discuss DEA's invocation of exemption 7(F) but finds the redacted material properly justified under this exemption as well. (*See* Myrick Decl. ¶¶ 90-94.)

8

"Exemption of Drug Enforcement Administration (DEA) Systems-limited access").

Thus, DEA's invocation of the Privacy Act is proper but of no material consequence.

This is because the Privacy Act excepts from its coverage documents that are

otherwise required to be disclosed under the FOIA, 5 U.S.C. § 552a(b)(2), and

defendant has reviewed and released records under the FOIA. *See Greentree v. United*

*States Customs Serv.*, 674 F.2d 74, 75 (D.C. Cir. 1982) (reversing and remanding "so

that the district court may consider appellant's FOIA request independently of the

Privacy Act").

The FOIA contains nine exemptions on which agencies may rely to withhold

documents.  Under exemption 7, the FOIA shields "records or information compiled

for law enforcement purposes" if they fall into one of six enumerated categories.  5

U.S.C. § 552(b)(7).  DEA has demonstrated through its description of the requested

records that they satisfy the threshold law enforcement purpose.  (*See* Myrick Decl. ¶¶

45-62).  Moreover, plaintiff cannot credibly refute that "[t]he records deemed

responsive to [his] FOIA request are criminal investigative records [that] were

compiled during criminal law enforcement investigations of plaintiff and several third

parties." (*Id.* ¶ 68.)  The remaining question is whether, in view of plaintiff's

opposing arguments, DEA's explanations set out in the Myrick declaration and

accompanying *Vaughn* index (Ex. H) support granting summary judgment to DOJ.  *See*

*Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 318 n.3 (D.C. Cir. 1982)

(explaining that "[i]n order to provide for proper judicial review and more adequate

adversarial testing of an agency's claim of exemption, this court, in *Vaughn v. Rosen*,

484 F.2d 820 (D.C. Cir.1973), *cert. denied*, 415 U.S. 977 (1974), outlined procedures whereby a district court may require an agency to itemize and index the contents of withheld records."). For the reasons explained next, the answer is yes.

### a. Exemption 7(C)

Exemption 7(C) protects from disclosure law enforcement records to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To determine whether disclosure constitutes an unwarranted invasion of personal privacy, the agency and the reviewing court must weigh the public interest in the release of information against the privacy interest in nondisclosure. *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989). "On the privacy side of the ledger, our decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003). This type of third-party information is "categorically exempt" from disclosure under exemption 7(C) in the absence of an overriding public interest in its disclosure. *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).

In assessing the public's interest in disclosure, "[t]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Citizens for*

10

*Responsibility & Ethics in Washington ("CREW") v. DOJ*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (quoting *Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994)) (internal quotation marks omitted).  "Where the privacy concerns addressed by [e]xemption 7(C) are present, . . . [the requester] must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake [and that] . . . the information is likely to advance that interest." *National Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  The inquiry "should focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld."  *Schrecker*, 349 F.3d at 661.

In order to demonstrate an overriding public interest in disclosure, a plaintiff may show that the withheld information is necessary to "shed any light on the [unlawful] conduct of any Government agency or official."  *Reporters Comm.*, 489 U.S. at 772-73.  In making such a showing, a plaintiff must assert "more than a bare suspicion" of official misconduct.  *Favish*, 541 U.S. at 174.  He "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  *Id.*  Absent such a showing, the balancing requirement does not come into play.  *See id.* at 175; *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("Unsubstantiated assertions of government wrongdoing . . . do not establish 'a meaningful evidentiary showing.'") (quoting *Favish*, 541 U.S. at 175).

**1. Privacy Interest**

DEA withheld the identities of DEA Special Agents and other law enforcement officers at the federal, state and local levels, reasoning that disclosure "would place [them] in a position that they may suffer undue invasions of privacy, harassment and humiliation[.]"  (Myrick Decl. ¶ 73.)  DEA has clearly articulated a privacy interest sufficient to invoke exemption 7(C).  *Cf. Ocasio v. Dep't of Justice*, 70 F. Supp. 3d 469, 480-81 (D.D.C. 2014) ("There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm.") (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991)).

**2.  Public Interest**

Plaintiff contends "that the Lake County Illinois State's Attorney's Office and other yet to be discovered governmental actors engaged in a host of illegal and unconstitutional acts."  Pl.'s Opp'n at 8.  He alleges specifically that the prosecuting office "knowingly and willingly violated the sanctity of *Brady* and *Giglio*," *id.*, and failed to "fulfill[] its discovery obligation as required by Illinois Supreme Court Rule 412." *Id.* at 9.  Even if true, the misconduct of Illinois officials is irrelevant to FOIA's central purpose of exposing to public scrutiny the performance of federal agencies in carrying out their statutory duties.  *Reporters Comm.*, 489 U.S. at 772-73.  Plaintiff posits that "had DEA/Justice Department chose to prosecute [him] instead of relinquishing said responsibility to the State of Illinois they would have been bound by Rule 16 of the Federal Rules of Criminal Procedure to again disclose the

records/information [he] now seeks in this complaint." (Pl.'s Opp'n at 10.) But this speculative claim cannot defeat summary judgment. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") Besides, prosecutorial decisions are within the discretion of the U.S. Attorney General and are "presumptively immune from judicial review." *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C. Cir. 1995).

Since plaintiff has made no evidentiary showing of misconduct by DEA, there is no "counterweight on the FOIA scale for [the] court to balance against the cognizable privacy interests in the requested records." *Favish*, 541 U.S. at 174-75. Accordingly, the Court finds summary judgment warranted on DEA's redaction of identifying information under exemption 7(C).

### b. Exemption 7(D)

Exemption 7(D) protects from disclosure law enforcement records that

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.' "

*Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (quoting *United States Dep't of Justice v. Landano*, 508 U.S. 165, 170-74 (1983)).

Since coded informants "are expressly assured confidentiality of their identities and the information they provide to DEA," Myrick Decl. ¶ 78, DEA properly invoked exemption 7(D) in response to plaintiff's request for records pertaining "to an individual [ ] plaintiff claim[ed] [was] a coded confidential informant." *Id*. ¶ 77. DEA's declarant further explains that "[s]ources of information . . . include individuals that were expressly granted confidentiality and those about whom, based upon the facts and circumstances, confidentiality was implied." *Id*. ¶ 79. When an implied assurance of confidentiality is asserted, the proper inquiry is "whether the particular source spoke with an understanding that the communication would remain confidential." *Landano*, 508 U.S. at 172. An implied assurance of confidentiality may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. *Id*; *Computer Professionals for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897, 905-06 (D.C. Cir. 1996).

According to DEA's declarant, the responsive information was "provided by an individual regarding the criminal activities related to the illicit manufacturing and trafficking in cocaine," where in "the experience of DEA [ ] violence is inherent . . . ." (Myrick Decl. ¶ 81.) In *Mays v. Drug Enforcement Admin.*, the Court of Appeals determined that there was "no doubt that a source of information about a conspiracy to distribute cocaine typically faces a sufficient threat of retaliation that the information

14

he provides should be treated as implicitly confidential." 234 F.3d 1324, 1331 (D.C. Cir. 2000). Plaintiff has not disputed DEA's characterization of the investigation. He therefore has conceded the nature of the investigation and the asserted danger inherent in prosecuting a case such as the one against plaintiff, which involved charges of "solicitation of murder for hire and possession of controlled substance with intent to deliver." Pl.'s Opp'n at 11. And the outcome of plaintiff's criminal case leaves little doubt that a source's confidentiality, if not expressed, was reasonably implied. *See People v. Love*, 2 N.E. 3d 628, 715 (Ill. 2013) ("While incarcerated and awaiting trial on the possession charge, defendant was charged with solicitation of murder for hire of two of the State's witnesses in his possession case [.] . . . Defendant was convicted of both offenses and his convictions were affirmed on direct appeal.")

Consequently, the Court will grant summary judgment to DEA on its application of exemption 7(D) to: (1) the identity of and information supplied by a confidential source contained in a Report of Investigation (*Vaughn* index at 48), and (2) the identifying information of a confidential source withheld in conjunction with exemption 7(F) (*Vaughn* index at 33, 34).

### c. Exemption 7(E)

Exemption 7(E) shields law enforcement records that if produced "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This encompasses "commonly known procedures .

. . if the disclosure could reduce or nullify their effectiveness." *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 870 F. Supp. 2d 70, 85 (D.D.C. 2012) (citation omitted). "Although [e]xemption 7(E) sets a 'low bar for the agency to justify withholding . . ., the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed.'" *CREW*, 746 F.3d at 1102 (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (emphasis in original)).

DEA withheld under this exemption G-DEP codes and NADDIS numbers, which are "identifiers [that] relate[] solely to internal DEA practices and can only be legitimately utilized by agency personnel functioning within the agency."[3] (Myrick Decl. ¶ 84.) The codes and numbers "reflect procedures prescribed by the DEA Agents Manual," which "sets forth the practices and guidelines used by DEA special agents" and others involved in gathering and documenting activities during the course of a criminal investigation. (*Id*. ¶ 83.)

G-DEP codes, assigned when a case file is opened, "indicate the classification of the violator(s), the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity." (*Id*. ¶

---

[3]   G–DEP stands for Geographical Drug Enforcement Program and "NADDIS is the acronym for DEA's Narcotics and Dangerous Drugs Information System[.]" *Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 04-1180, 2006 WL 695905, at *6, 7 (D.D.C. Mar. 17, 2006). The redaction of G-DEP codes and NADDIS numbers also under FOIA exemption 2 has been "routinely affirmed as relating to internal practices of no significant public interest." *Id*. at *6 (listing cases); *see also Lasko v. U.S. Dep't of Justice*, 684 F. Supp. 2d 120, 130 (D.D.C. 2010), *aff'd*, No. 10-5068, 2010 WL 3521595 (D.C. Cir. Sept. 3, 2010) ("Both G-DEP codes and NADDIS numbers fall within the scope of [e]xemption 2 and routinely are withheld.") (listing cases). .

84.)  NADDIS numbers are "assigned to [known and suspected] drug violators . . . and entities that are of investigative interest."  (*Id.* ¶ 86.)  "Each number is unique and is assigned to only one violator within the DEA NADDIS indices."  (*Id.*)  DEA's declarant explains that the release of the codes could "thwart . . . DEA's investigative and law enforcement efforts" because if decoded, "[s]uspects [could] change their pattern of drug trafficking" based on what they think DEA knows or "avoid detection and apprehension and create excuses for suspected activities."  (*Id.* ¶ 87.)  Similarly, the release of NADDIS numbers "could allow violators to avoid apprehension, and could place law enforcement personnel or informants in danger, since many details of a DEA investigation would be disclosed."  (*Id.* ¶ 88.)  "[V]iolators would be aware of how to respond in different situations where detection and/or apprehension are imminent [and] . . . in a manner that would help them avoid detection and arrest."  (*Id.*)

Plaintiff has not seriously contested DEA's reliance on exemption 7(E), and the redaction of such codes and numbers has been routinely upheld for the very reasons asserted here.  *See Dorsey v. EOUSA*, ___ F. Supp. 3d ___, ___, 2015 WL 1283053, at * 6 (D.D.C. Mar. 19, 2015) (citing *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 151 (D.D.C. 2013); *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 28-29 (D.D.C. 2012)).  "Absent a compelling challenge, [DEA's] response survives the court's review."  *Ryan v. Fed. Bureau of Investigation*, ___ F. Supp. 3d ___, ___, 2015 WL 4181033, at *3 n.5 (D.D.C. July 10, 2015).

### d. Record Segregability

An agency must disclose "[a]ny reasonably segregable portion" of an otherwise exempt record.  5 U.S.C. § 552(b).  While an agency is presumed to have complied with its obligation to disclose non-exempt portions of the record, a "district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).  When, as here, records are withheld in their entirety, a determination must be made as to whether any portion of those records could have been segregated and released.  *Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999).  To justify the withholding of entire records, an agency must demonstrate that the "exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Mays*, 234 F.3d at 1327 (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)) (other citation and internal quotation marks omitted).

DEA's declarant avers that "[a]ll of the responsive information was examined to determine whether any reasonably segregable information could be released." (Myrick Decl. ¶ 95.)  DEA withheld entire pages where "the release of any additional information would . . . result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business" or that would result in the harms contemplated by the claimed exemptions.  (*Id.*)  The Court of Appeals has "long recognized . . . that

18

documents may be withheld in their entirety when nonexempt portions 'are inextricably intertwined with exempt portions.'" *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008) (quoting *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).  Plaintiff has not seriously contested this aspect of DEA's declaration, which "show[s] with 'reasonably specificity' why the [subject] documents cannot be further segregated." *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (quoting *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996)).

## CONCLUSION

For the foregoing reasons, the Court concludes that no genuine dispute exists with regard to DEA's full compliance with the FOIA and that DOJ, as the parent agency, is entitled to judgment as a matter of law.  A separate order accompanies this memorandum opinion.


Date:  August 26, 2015                    *Tanya S. Chutkan*
                                          TANYA S. CHUTKAN
                                          United States District Judge